IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>ADRIAN JOSEPH ALVARADO,<br><br>　　　　　　　Defendant. | Case No. 4:22-cr-00103-DN-PK<br><br>MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL DISCOVERY<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Before the Court is Defendant's Motion to Compel Discovery.[1] For the reasons discussed, the Court DENIES the motion.

I. PROCEDURAL BACKGROUND

On September 28, 2022, Defendant was charged with possession of methamphetamine with intent to distribute, possession of cocaine with intent to distribute, and possession of marijuana with intent to distribute.[2] These charges stem from a traffic stop conducted on or about August 29, 2022.

Defendant filed a Motion to Suppress on July 26, 2023.[3] He moved to suppress all fruits of his detention, arrest, and interrogation. An evidentiary hearing was held on November 8 and 9, 2023, but was cut short when Mr. Alvarado terminated the services of his attorney. Mr. Alvarado has been through several attorneys since then. He is currently represented by Mr. Scott Garrett.

---

[1] Docket No. 76, filed May 1, 2024.

[2] Docket No. 1.

[3] Docket No. 37.

## II. FACTUAL BACKGROUND

The facts, at least as alleged by Officer Nolan Tanner, are as follows: On August 29, 2022, Mr. Alvarado was traveling northbound on I-15 in St. George, Utah.[4] That day, Washington City Police Officer Nolan Tanner was on patrol in the area of I-15 as a narcotics interdiction officer for the Homeland Security Task Force. At approximately 8:13 p.m. near mile marker 8, Officer Tanner noticed a black Kia Sorento SUV quickly exit the freeway.[5] Officer Tanner also noticed an orange construction vest hanging in the back window of the car, and he saw the driver looking at him through the side mirrors.[6] Officer Tanner followed Mr. Alvarado off the interstate to a nearby Maverick.[7] Another officer, Sergeant Joe Watson, was already at the gas station when Mr. Alvarado and Officer Tanner arrived.[8]

Officer Tanner testified that he was watching Mr. Alvarado to see if he was actually going to pump gas or if he had exited the freeway trying to evade law enforcement.[9] While waiting, Officer Tanner ran Mr. Alvarado's license plate through a system called the Automated License Plate Reader ("ALPR"), which showed Mr. Alvarado's travel history.[10]

Approximately three to five minutes[11] after arriving at the gas station, Officer Tanner determined he would be conducting a traffic stop because there were items hanging from the

---

[4] Docket No. 69, at 29:12–19.

[5] *Id.* at 29:18–25; 111:25; 112:1–6.

[6] *Id.* at 30:2–8.

[7] *Id.* at 31:8–16.

[8] *Id.* at 33:10–20; 102:18–24.

[9] *Id.* at 32:12–24.

[10] *Id.* at 105:21–25; 106:7–19; 107:3–15; 113:5–16; 116:7–21.

[11] *Id.* at 36:22–37:2; 104:18–23.

rearview mirror which he believed obstructed Mr. Alvarado's view in violation of Utah law.[12] Officer Tanner followed Mr. Alvarado again as he left the Maverick and re-entered the northbound lanes of I-15.[13] Sergeant Watson also followed Mr. Alvarado's vehicle for a time.[14] Between mile markers 12 and 14, Officer Tanner allegedly observed Mr. Alvarado following another car too closely.[15] At approximately 8:40 p.m., Officer Tanner contacted Deputy Montgomery to respond to the impending traffic stop.[16]

Shortly thereafter near mile marker 16, Officer Tanner conducted a traffic stop on Mr. Alvarado's vehicle for both the windshield obstruction and following too close violations.[17] Upon approaching the SUV, Officer Tanner observed several, large cardboard boxes, backpacks, and duffel bags in the cargo area.[18] Mr. Alvarado was the sole occupant of the vehicle.[19] While speaking with Mr. Alvarado, Officer Tanner detected a strong odor of marijuana coming from Mr. Alvarado's vehicle.[20] After Deputy Montgomery arrived, Mr. Alvarado was asked to exit the car and the officers searched it discovering marijuana, THC cartridges, methamphetamine, fentanyl pills, and cocaine.[21]

---

[12] *Id.* at 34:14–16; 35:3–36:19; Utah Code Ann. § 41-6a-1635(2)(a) ("A person may not operate a motor vehicle with an object or device hanging or mounted in a manner that materially obstructs the operator's view.")

[13] Docket No. 69, at 37:16–38:14, 40:10–13.

[14] *Id.* at 103:4–20.

[15] *Id.* at 41:21–47:13.

[16] Docket No. 70, at 151:3–13; 175:2–21.

[17] *Id.* at 152:10.

[18] Docket No. 69, at 50:15–22.

[19] *Id.* at 51:1–2.

[20] *Id.* at 52:6–10; 54:8–23.

[21] *Id.* at 60:3–66:25.

III. DISCUSSION

On May 1, 2024, Mr. Alvarado filed a motion to compel discovery[22] seeking all incident reports from all of Officer Nolan Tanner's traffic stops two months prior to and two months after Mr. Alvarado's arrest on August 29, 2022. The federal rules provide that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy . . . documents . . . if the item is [(a)] within the government's possession, custody, or control and: [(b)] the item is material to preparing the defense."[23] Central to Mr. Alvarado's motion, then, are two issues: (1) whether the reports are within the government's control and (2) whether the reports are material to Mr. Alvarado's defense.

A. DISCOVERY IS NOT IN GOVERNMENT'S CONTROL

Information is in the government's possession, custody, or control if the prosecutor has *knowledge of* (or may become aware of the documents by the exercise of due diligence) and *access to* the documents sought by the defendant.[24] Although the Tenth Circuit has not specifically addressed this issue, several other courts have held that the prosecutor is deemed to have knowledge of and access to anything in the possession, custody, or control of any *federal agency* participating in the investigation of the defendant.[25] Courts examining Rule 16(a)(1)(E) have held that items possessed by state officials are not within the federal government's possession, custody,

---

[22] Docket No. 76.

[23] Fed. R. Crim. P. 16(a)(1)(E).

[24] *See e.g., United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010); *United States v. Santiago*, 46 F.3d 885, 893 (9th Cir. 1995); *United States v. Lawson*, 991 F.2d 806, at *2 (10th Cir. 1993) (unpublished table decision); *United States v. Dibee*, No. 6:06-cr-60011-AA, 2022 WL 4396871, at *1 (D. Or. Sept. 23, 2022); *United States v. Davis*, No. 1:18-cr-0052-EJL, 2019 WL 2146584, at *2 (D. Idaho May 16, 2019).

[25] *Davis*, 2019 WL 2146584, at *2 (collecting cases); *United States v. Lujan*, 530 F. Supp. 2d 1224, 1234 (D.N.M. Jan. 14, 2008) (citing *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989)).

or control,[26] unless those items pass into federal possession.[27] Rule 16 does not require the prosecution team to conduct an interagency search for evidence.[28]

Here, Mr. Alvarado seeks copies of Washington City Police Officer Nolan Tanner's incident reports, separate and unrelated to Mr. Alvarado's arrest. The government denies having any of these reports in its possession. Even if the U.S. Attorney's Office were aware of these incident reports, such reports are not in its possession, custody, or control because the documents are in *state*, not federal, custody. Furthermore, the federal government is not presumed to have access to state agency records when they are unrelated to the instant offense. Since the requested records, Officer Tanner's unrelated incident reports, are not in the government's possession, custody, or control, Mr. Alvarado is not entitled to them under Rule 16.

B. DISCOVERY IS NOT MATERIAL TO THE DEFENSE

Rule 16 allows for discovery of items that are material to preparing a defendant's defense. The Supreme Court has held "that in the context of Rule 16 'the defendant's defense' means the defendant's response to the Government's case in chief."[29] The Court rejected the argument that "a 'defense' includes any claim that is a 'sword, challenging the prosecution's conduct of the

---

[26] *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) (holding that the term "government" in Rule 16 does not include local law enforcement); *United States v. Hamilton*, 107 F.3d 499, 509 n.5 (7th Cir. 1997) (observing that "[u]nlike *Brady*, however, Rule 16(a)(1)(C) imposes upon the federal government no duty to obtain documents that are controlled by the state government or police, even if the prosecution is aware of the items"); *United States v. Brazel*, 102 F.3d 1120, 1150 (11th Cir. 1997); *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1375 (9th Cir. 1987) (holding that Rule 16 did not obligate federal government to obtain financial records from state officials, even though the prosecutor was aware of the records, because the federal government had no control over them).

[27] *Davis*, 2019 WL 2146584, at *2; *Lujan*, 530 F. Supp. 2d at 1234 (citing *United States v. Fort*, 472 F.3d 1106, 1118 (9th Cir. 2007)).

[28] *United States v. McArdle*, No. 2:20-CR-56-JRG-HBG, 2021 WL 149411, at *4 (E.D. Tenn. Jan. 15, 2021) (citing *United States v. Skaggs*, 327 F.R.D. 165, 174 (S.D. Ohio 2018)).

[29] *United States v. Armstrong*, 517 U.S. 456, 462 (1996).

5

case,'" and instead adopted a reading of the term to "encompass only the narrower class of 'shield' claims, which refute the Government's arguments that the defendant committed the crime charged."[30] Thus, evidence "material to preparing the defense" refers specifically to arguments that respond to the government's case in chief rather than simply any argument that might ultimately prevent a conviction. As such, courts have denied requests for discovery of information to be used in suppression hearings.[31]

Even assuming these reports are discoverable, they are nonetheless immaterial. Defendant argues that this evidence may show that Officer Tanner has a pattern of pretextual stops.[32] However, whether a stop is justified is an objective question.[33] Thus, whether Officer Tanner has a pattern of engaging in pretextual stops is irrelevant.[34] While Officer Tanner's credibility is certainly relevant, his alleged history of pretextual stops is not. And the officer's credibility can be adequately challenged on cross-examination.

---

[30] *Id.*

[31] *United States v. Palaniappan*, No. 15-cr-485(FB), 2018 WL 1997973, at *3 (E.D.N.Y Apr. 27, 2018) ("Rule 16 deals with information material to the defendant's case on the merits, not collateral issues like a motion to suppress."); *but see United States v. Soto-Zuniga*, 837 F.3d 992, 1001 (9th Cir. 2016) (holding that "Rule 16(a)(1)(E) permits discovery to determine whether evidence in a particular case was obtained in violation of the Constitution").

[32] Docket No. 69, at 5:21–23.

[33] *See Whren v. United States*, 517 U.S. 806, 813 (1996); *United States v. Botero-Ospina*, 71 F.3d 783, 785 (10th Cir. 1995) (en banc) (rejecting a subjective test and the doctrine of pretextual stops).

[34] *United States v. Anderson*, 114 F.3d 1059, 1067 (10th Cir. 1997) (affirming denial of discovery motions seeking information about pretextual stops); *United States v. Cooper,* No. 89–10025–01, 1989 WL 138716, at *2 (D. Kan. Oct. 19, 1989) (denying discovery request for incident reports to attempt to demonstrate a pattern of pretextual stops); *United States v. Taylor*, No. 97–10125–01, 1998 WL 227161, at *7 (D. Kan. Apr. 18, 1998) (ruling that evidence of past, pretextual stops or an officer's inappropriate motive for the stop is irrelevant and therefore not discoverable); *United States v. Adkins*, 1 F. App'x 850, 851 (10th Cir. 2001) (upholding exclusion of testimony concerning officer's alleged history of pretextual stops as irrelevant).

Finally, even if the incident reports were in the government's possession, custody, and control, and were discoverable and material, it is unclear how they provide Defendant with the information he seeks to discover. Defendant posits that "[i]f a pattern can be developed that Officer Tanner omits certain relevant facts or has material inconsistencies in his reports that belie the truth, [Defendant] should have access to that."[35] Yet Defendant offers no explanation as to how he intends to uncover that Officer Tanner has omitted relevant facts from his reports or that they contain material inconsistencies. It seems highly unlikely that Defendant would be able to glean such information solely from incident reports authored by Officer Tanner. After all, if Officer Tanner engages in pretextual stops as asserted by Defendant, he is unlikely to include that kind of information in his reports. In addition to the incident reports, Defendant would likely need witness testimony or body camera/dash camera footage to corroborate his claim. Defendant has not requested such information and it would impose an undue burden on the government to obtain this information from a third-party state law enforcement agency. In sum, Defendant is seeking irrelevant information that is unlikely to provide him with the evidence he wishes to present.

## IV. CONCLUSION

For the reasons discussed, the Court DENIES Defendant's Motion to Compel, Docket No. 76.

SO ORDERED this 20th day of May, 2024.

PAUL KOHLER
United States Magistrate Judge

---

[35] Docket No. 76, at 4.